**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2400
_____

UNITED STATES OF AMERICA

v.

MICHAEL W. SEIBERT, JR.,
Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-17-cr-00572-001)
District Judge: Honorable Joseph F. Leeson, Junior
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 29, 2020
_____

Before: AMBRO, HARDIMAN, and RESTREPO, *Circuit Judges*.

(Filed: August 19, 2020)

John J. Waldron
Huber, Waldron & Williams, LLP
535 Hamilton Street, Suite 102
Allentown, PA 18101

     *Counsel for Appellant*

William M. McSwain
Frank A. Labor III
Michelle Rotella
Eileen C. Zelek
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

     *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RESTREPO, *Circuit Judge*.

Michael Seibert pleaded guilty to production and possession of child pornography following a raid in which law enforcement agents recovered approximately 1,500 images. The District Court imposed a sentence of 360 months' imprisonment, which fell within the Sentencing Guidelines range. On appeal, Seibert challenges his sentence on procedural and substantive grounds. Because the District Court did not commit a procedural error and Seibert does not satisfy his burden to prove substantive unreasonableness, we will affirm the sentence the District Court imposed.

# I.

Seibert first started viewing child pornography a decade ago. He used several computers and a cell phone to view images and he stored them on flash drives, a SkyDrive cloud storage account, and several email accounts. He also participated in Internet chat rooms about child pornography and even created a Facebook profile depicting himself as a teenager to communicate with children. He spent years obtaining, producing, and storing child pornography.

Approximately ten years ago, Seibert began to communicate with two teenage females. Over the next three to four years, he chatted with them via Internet chat rooms, text messages, and phone. Seibert convinced both to send him sexually explicit photos of themselves. His criminal activity did not end there—he also communicated with at least ten other minors and sent several nude images of himself to minors.

After receiving a tip that child pornography was uploaded to a SkyDrive account, Homeland Security Investigations ("HSI") began investigating Seibert in March 2014. On July 2, 2014, law enforcement agents executed a search of his residence, where they seized computers and storage devices containing child pornography. At the time of the search, the agents also interviewed Seibert. He admitted to viewing and storing child pornography. Law enforcement ultimately recovered 1,525 images.

On October 26, 2017, Seibert was indicted for two counts of production and one count of possession of child pornography. He eventually pleaded guilty to each count. In calculating the applicable Sentencing Guidelines range, the

Probation Office recommended applying enhancements under U.S.S.G. §§ 2G2.2(b)(5) and 4B1.5(b)(1), resulting in a total offense level of 42. The Guidelines range amounted to 360 months to life imprisonment.

The sentencing hearing took place on June 6, 2019. While Seibert advocated for the statutory minimum sentence of fifteen years' imprisonment, the Government requested thirty years, which is the low end of the Guidelines range. After applying the two enhancements and weighing the 18 U.S.C. § 3553(a) sentencing factors,[1] the District Court sentenced

---

[1] Pursuant to § 3553(a), the trial court must consider the following factors upon sentencing a defendant:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed . . . ;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and sentencing range established . . . ;
>
> (5) any pertinent policy statement . . . [;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

Seibert to 360 months' imprisonment. Seibert filed a timely notice of appeal to challenge the District Court's judgment of conviction and sentence.

## II.

The District Court had jurisdiction over the criminal proceedings under 18 U.S.C. § 3231. This Court has jurisdiction to review Seibert's final conviction and sentence pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

"[A]ppellate review of sentencing decisions is limited to determining whether they are reasonable." *Gall v. United States*, 552 U.S. 38, 46 (2007) (internal quotation marks omitted). The burden is on the party challenging the sentence to show that it was unreasonable. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). The abuse of discretion standard applies to our reasonableness review. *Id.* Factual findings relevant to the Sentencing Guidelines are reviewed for clear error, and the District Court's Guidelines interpretation is reviewed de novo. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). The District Court's application of the Guidelines is reviewed for abuse of discretion. *United States v. McClure-Potts*, 908 F.3d 30, 33 n.2 (3d Cir. 2018).

## III.

Seibert claims that the District Court procedurally erred in its Guidelines calculation. He also argues that the District Court's sentence is substantively unreasonable. We disagree.

5

**A.**

District courts follow a three-step process to determine the appropriate sentence following a criminal conviction. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). The sentencing court must "first calculat[e] the applicable Guidelines range[,] . . . then rule on any motions for departure and, if a motion is granted, state how the departure affects the Guidelines calculation[,] . . . [and finally] consider all of the § 3553(a) factors and determine the appropriate sentence to impose." *United States v. Levinson*, 543 F.3d 190, 194–95 (3d Cir. 2008). "[T]he Guidelines are only advisory, but they nonetheless provide the initial benchmark." *United States v. Lopez-Reyes*, 589 F.3d 667, 670 (3d Cir. 2009) (internal quotation marks omitted).

On appeal, we first consider whether the district court committed procedural error, such as "improperly calculating[] the Guidelines range . . . [or] failing to consider the § 3553(a) factors." *Tomko*, 562 F.3d at 567 (quoting *Gall*, 552 U.S. at 51). We then determine if the sentence is substantively reasonable. *United States v. Merced*, 603 F.3d 203, 214 (3d Cir. 2010). We focus on the "totality of the circumstances" and affirm a procedurally sound sentence "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided."[2] *Tomko*, 562 F.3d at 567–68. Overall, our

---

[2] Procedural and substantive reasonableness are often interconnected as "procedural problems may lead to substantive problems." *Levinson*, 543 F.3d at 195; *see also United States v. Goff*, 501 F.3d 250, 256 (3d Cir. 2007) (noting

reasonableness review focuses on "whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *Grier*, 475 F.3d at 571.

**B.**

Seibert argues that the District Court procedurally erred by miscalculating the applicable Guidelines range. He specifically challenges the District Court's concurrent application of the five-level enhancements under both § 2G2.2(b)(5) and § 4B1.5(b)(1). In his view, the District Court engaged in improper "double counting" because the provisions' language is identical, and each enhancement applied to the same conduct.

In *United States v. Reynos*, this Court explained that "[i]mproper double counting occurs when a district court imposes two or more upward adjustments within the same Guideline range, when both are premised on the same conduct." 680 F.3d 283, 291 (3d Cir. 2012). However, double counting is permissible so long as the Guidelines do not explicitly prohibit simultaneous application of the provisions in question. *See United States v. Johnstone*, 107 F.3d 200, 212 (3d Cir. 1997) (concluding that double counting of weapons enhancements "is permissible because it is explicitly mandated by the clear and unambiguous language" of the relevant Guidelines section); *United States v. Wong*, 3 F.3d 667, 671 (3d Cir. 1993) (noting that "an adjustment that clearly applies to the conduct of an offense must be imposed unless the Guidelines exclude its applicability").

---

that substantive issues in the case were "a product of the District Court's procedurally flawed approach").

We begin with the language of § 2G2.2(b)(5) and § 4B1.5(b)(1) to determine whether the Guidelines prohibit their simultaneous application. Section 2G2.2(b)(5) provides for a five-level increase "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." A pattern of activity is defined as "any combination of two or more separate instances" of sexual abuse or exploitation of a minor. § 2G2.2 cmt. n.1. Section 2G2.2(b)(5) is an offense-specific enhancement that "punish[es] a defendant for the specific characteristics of the offenses of conviction." *See United States v. Dowell*, 771 F.3d 162, 171 (4th Cir. 2014).

Section 4B1.5(b)(1) is similar to § 2G2.2(b)(5) in some respects but ultimately addresses a separate sentencing consideration. This enhancement mandates a five-level increase for a "covered sex crime" in which "the defendant engaged in a pattern of activity involving prohibited sexual conduct." § 4B1.5(b)(1). The notes define a pattern of activity as, "on at least two separate occasions, . . . engag[ing] in prohibited sexual conduct with a minor." § 4B1.5 cmt. n.4(B)(i). Because it pertains to the part of the Guidelines dealing with career offenders, § 4B1.5(b)(1) is more than an offense-specific enhancement. *Dowell*, 771 F.3d at 171 (noting that the enhancement "is located in Chapter Four of the Guidelines under the provisions covering 'Career Offenders and Criminal Livelihood'"). It allows district courts to impose longer sentences when "the defendant presents a continuing danger to the public." *Id.*[3]

---

[3] Seibert urges us to require district courts to identify the specific aims of the enhancements in order to simultaneously apply both. We decline to do so because neither the Guidelines

The Guidelines do not prohibit simultaneous application of these two enhancements. *See id.* at 170 (stating that applying § 2G2.2(b)(5) and § 4B1.5(b)(1) "to the same conduct was permitted because it was not expressly prohibited by the Guidelines"). In fact, the Guidelines expressly contemplate the application of both enhancements to the same conduct. *See* § 4B1.5(b)(1) ("The offense level shall be 5 *plus the offense level determined under Chapters Two and Three*.") (emphasis added); *see also Dowell*, 771 F.3d at 170 ("[T]he [G]uidelines intend the cumulative application of these enhancements." (quoting *United States v. Schellenberger*, 246 F. App'x 830, 832 (4th Cir. 2007))). Therefore, even if the District Court applied § 2G2.2(b)(5) and § 4B1.5(b)(1) to the same conduct, it did not err because the Guidelines permit the simultaneous application of both enhancements.

Moreover, the District Court applied the § 2G2.2(b)(5) and § 4B1.5(b)(1) enhancements to *different* conduct. *See United States v. Fisher*, 502 F.3d 293, 309 (3d Cir. 2007) (allowing simultaneous application of two enhancements where each "involves conduct which the other does not"). Regarding the § 4B1.5(b)(1) enhancement, the District Court explained that Seibert's "production of child pornography with minor number one and minor number two constitutes a pattern of activity because each count represents a second occasion." App. 109. Meanwhile, the District Court applied § 2G2.2(b)(5) to Seibert's possession conviction because he possessed sexually explicit images of minors in addition to the two referenced in the indictment. Each enhancement covers dissimilar conduct against separate groups of minors.

---

nor our precedent requires the sentencing court to make such a showing.

The District Court did not engage in impermissible double counting when it simultaneously applied the enhancements under § 2G2.2(b)(5) and § 4B1.5(b)(1). Not only did it apply each enhancement to distinct conduct, but the Guidelines allow for the simultaneous application of both enhancements even to the same conduct. The Court's Guidelines calculation did not result in a procedural error.

## C.

Seibert next claims that 360 months' imprisonment is a substantively unreasonable sentence and that the District Court should have granted a downward variance.[4] He argues that the District Court's application of the § 3553(a) factors led to an unduly harsh sentence because it did not place enough weight on his personal circumstances.

---

[4] At certain points in his brief, Seibert seems to suggest that the District Court ignored the § 3553(a) factors, which would be procedural error. *United States v. Negroni*, 638 F.3d 434, 444 n.9 (3d Cir. 2011) (identifying "fail[ure] to consider the § 3553(a) factors" as indicative of procedural error (quoting *Gall*, 552 U.S. at 51)). However, since Seibert premises his § 3553(a) arguments on the perceived inadequate weight afforded to those factors, and since the Court clearly applied the § 3553(a) factors, we construe these arguments as substantive rather than procedural challenges. *Merced*, 603 F.3d at 217 (clarifying that the sentencing court's "choice of sentence did not afford [the § 3553(a)] factors *enough* weight . . . is a substantive complaint, not a procedural one") (emphasis in original).

In support of a downward variance from the Guidelines range, Seibert presented evidence detailing his personal history and characteristics, including the mental health, medical, and learning challenges he has long faced. In particular, Seibert submitted a psychological evaluation concluding that he "has the libido of an adult but the mind of a small child and does not have the capacity to use rationality to control his impulses." App. 59. During the sentencing hearing, the District Court acknowledged this evidence but concluded that Seibert's "family struggles" are not "unusually severe." App. 171–72. The District Court thus declined to grant Seibert's request for a downward variance from the Guidelines range to the fifteen-year mandatory minimum.

Seibert's argument that the District Court abused its discretion by not affording enough weight to those factors is unavailing. As we have previously explained, "a district court's failure to give mitigating factors the weight a defendant contends they deserve" does not make a sentence substantively unreasonable. *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007); *see also United States v. Young*, 634 F.3d 233, 243 (3d Cir. 2011) ("The District Court's decision to accord less weight to mitigation factors than that urged by [the defendant] does not render the sentence unreasonable."). It is the trial court that "sees and hears the evidence, makes credibility determinations, [and] has full knowledge of the facts and gains insights not conveyed by the record." *Tomko*, 562 F.3d at 561 (quoting *Gall*, 552 U.S. at 51). We thus defer to the District Court's application of the § 3553(a) factors. *Bungar*, 478 F.3d at 543 (noting that our review of a district court's application of the § 3553(a) factors "to the circumstances of [a] case . . . is highly deferential").

Seibert views the Guidelines ranges for child pornography offenses as too harsh and his conduct as less serious than that of other defendants who received similar sentences. It is not our role as a reviewing court to vacate a sentence within the Guidelines range due to policy disagreements with the Guidelines. *See Tomko*, 562 F.3d at 574 ("If abuse-of-discretion review cannot strike [the balance between reducing unjustified sentencing disparities and considering defendants as individuals], it is not our role as appellate judges to adjust the scales."); *see also United States v. Booker*, 543 U.S. 220, 265 (2005) ("The National Legislature is equipped to devise and install, long term, the sentencing system, compatible with the Constitution, that Congress judges best for the federal system of justice."). Congress is best suited to make policy determinations regarding the appropriateness of the Guidelines ranges for child pornography.

That is why defendants bear a "heavy burden [to show] that a sentence within the applicable Guidelines range was substantively unreasonable." *See United States v. Fountain*, 792 F.3d 310, 323 (3d Cir. 2015). Seibert does not satisfy his burden. He possessed more than 1,500 images of child pornography, admitted to exposing himself to others on dozens of occasions, posed as a teenager to coerce two children to send him sexually explicit images of themselves, communicated with other minors in the attempt to entice them to do the same, and even convinced a woman to send him pictures of herself having sexual contact with her seven-year-old daughter. The Guidelines ranges for child pornography offenses are high to deter individuals from the very activity Seibert engaged in. *Cf. Goff*, 501 F.3d at 261 ("The logic of deterrence suggests that the lighter the punishment for downloading and uploading

12

child pornography, the greater the customer demand for it and so the more will be produced." (quoting *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007)). The District Court did not abuse its discretion when it sentenced Seibert to the low end of the Guidelines range for his criminal conduct. Thus, we hold that Seibert's sentence is procedurally and substantively reasonable.

## IV.

For the foregoing reasons, we will affirm the District Court's judgment sentencing Seibert to prison for 360 months.