**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————————

No. 24-2452

————————————

UNITED STATES OF AMERICA

v.

DION MARSH,
                                      Appellant

————————————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:24-cr-00071-001)
District Judge: Hon. Zahid N. Quraishi
Submitted Under Third Circuit L.A.R. 34.1(a)
on July 11, 2025

————————————

Before: RESTREPO, BIBAS, and CHUNG, *Circuit Judges*

(Filed: August 13, 2025)

————————————

OPINION*

————————————

BIBAS, *Circuit Judge*.

Over seven hours, Dion Marsh ran over four Orthodox Jewish men with his car, stabbed

one of them, and beat a fifth. His motivation is no mystery. In his words, "it had to be done"

---

\* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

because "the Hasidic Jews" "are the real devils" who "had this coming." D. Ct. Dkt. D.I. 1 at 8. We will affirm his sentence.

Marsh started with carjacking. He approached a car with an Orthodox Jewish driver who was stopped in traffic. He opened the door, beat the driver repeatedly, and drove off in the car. Inside was a set of traditional Orthodox Jewish clothes. Marsh parked the stolen car at home and donned the stolen clothing. Then he got into his grandmother's car and headed back out. Around four hours later, he ran over an Orthodox Jewish man. Then he did the same to another Orthodox Jew. This time, Marsh turned the car around and tried to run him over again after seeing that his victim was still alive.

Next, Marsh went home and switched cars. He got into the stolen car and ran over a third Orthodox Jew. He then got out of the car, kicked the man in the ribs, and stabbed him in the neck. As the man lay bleeding, he screamed out: "[W]hat have I done to deserve this?" App. 89. In response, Marsh only laughed. He then struck one last time, veering off the road to run over a fourth Orthodox Jew.

Marsh left his victims "handicap[ped]," "living in pain," and "forever changed." App. 88, 92. They now live knowing that they were "attacked because [they] w[ere] born a Jew." App. 89. One "almost lost … belief that a man can persevere in this country because he is not bound by his beliefs." App. 90.

Marsh was arrested and charged under the Hate Crimes Prevention Act along with carjacking. He pleaded guilty. The applicable sentence depended on the underlying offense for the hate crimes. If Marsh's actions were premeditated, then that would be first-degree attempted murder. The appropriate Guidelines sentence would then be 324 to 405 months.

2

That is what the presentencing report (PSR) suggested. The parties disagreed. The government and Marsh instead stipulated to a sentence of 168 to 210 months, which did not factor in premeditation.

But parties do not set the sentence—the judge does. At sentencing, the District Court overruled the parties' objections and adopted the PSR's recommendation. Then, considering the statutory sentencing factors, it found that an upward variance was justified and sentenced Marsh to 480 months in prison. *See* 18 U.S.C. § 3553(a). Marsh appealed his sentence on four different grounds, but each fails.

*First*, the District Court did not clearly err by finding Marsh's actions premeditated and did not abuse its discretion by applying the sentencing guideline for first-degree attempted murder. *United States v. Raia*, 993 F.3d 185, 191 (3d Cir. 2021); *United States v. Blackmon*, 557 F.3d 113, 118 (3d Cir. 2009); U.S.S.G. § 2A2.1. Marsh argues that his four attempted murders were not premeditated, so the Guideline should not have applied. *See United States v. Brooks*, 67 F.4th 1244, 1248–50 (10th Cir. 2023). But his actions suggest otherwise. Marsh's attacks took place over a seven-hour stretch, during which he stole a car, donned a disguise, got a weapon, and even switched cars along the way. The District Court walked through that process and concluded that it was "considered and contemplated," satisfying the "[c]onscious consideration and planning" required for premeditation. App. 67 (first quotation); *Premeditation*, *Black's Law Dictionary* (12th ed. 2024) (second quotation); *see also United States v. Hodge*, 870 F.3d 184, 206 (3d Cir. 2017). So there was no clear error in finding his acts premeditated and no abuse of discretion in applying the guideline based on that factual finding.

3

*Second*, the District Court did not err by considering Marsh's lack of remorse. Marsh argues that the District Court plainly erred by remarking on Marsh's silence because that forced him to allocute. *See United States v. Lopez*, 650 F.3d 952, 959 (3d Cir. 2011). That, Marsh says, violated his Fifth Amendment privilege against self-incrimination. But the Supreme Court has "express[ed] no view" on whether inferences about remorse from silence are permissible at sentencing. *Mitchell v. United States*, 526 U.S. 314, 330 (1999); *White v. Woodall*, 572 U.S. 415, 421 (2014) ("*Mitchell* itself leaves open the possibility that some inferences might permissibly be drawn from a defendant's penalty-phase silence."). And the Third Circuit has not addressed this question either. So the District Court did not err "under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993).

Nor did the District Court plainly err by inferring a lack of remorse on these facts. Marsh's eventual allocution was a brisk nine sentences. The District Court, which "hear[d] the evidence" and had "insights not conveyed by the record," found him "disingenuous." *Gall v. United States*, 552 U.S. 38, 51 (2007) (first two quotations) (internal quotation marks omitted); App. 93 (third quotation). "[W]e give singular deference to a trial court's judgments about the credibility of witnesses," so there is no plain error. *Cooper v. Harris*, 581 U.S. 285, 309 (2017).

*Third*, the District Court neither plainly erred nor abused its discretion when it was not persuaded by Marsh's evidence about his mental health. We review whether the court "took the pertinent factors into account." *United States v. Young*, 634 F.3d 233, 243 (3d Cir. 2011) (cleaned up), *abrogated on other grounds by Esteras v. United States*, 145 S. Ct. 2031, 2038 (2025). Here, the District Court noted that there was "no diagnosis of a mental

4

health issue," and found that other evidence of a mental-health crisis was "speculative, at best." App. 76–77, 78. Though Marsh wanted the court to infer that his violent attacks on other inmates, among other things, were evidence of a mental health crisis (that should *reduce* his sentence), the court reasonably weighed those factors differently, reading them as evidence of dangerousness (that should *increase* his sentence). *See* 18 U.S.C. § 3553(a)(2)(C) (trial court *must* consider the need "to protect the public from further crimes of the defendant"). That was well within the District Court's discretion.

*Finally*, the District Court's sentence was not substantively unreasonable. We review for abuse of discretion. *United States v. Seibert*, 971 F.3d 396, 399 (3d Cir. 2020). Marsh's argument recycles his other ones: He says that the first three issues with the sentence, taken together, make it substantively unreasonable. Because we reject those other arguments, we also reject this one.

Relatedly, Marsh objects that the "court was so appalled by the offense that it lost sight of the offender." *United States v. Olhovsky*, 562 F.3d 530, 549 (3d Cir. 2009). He quotes this line from *Olhovsky* twice, likening this case to that one. But we must read that line in the context of the procedural errors that tainted Olhovsky's sentence. *United States v. King*, 604 F.3d 125, 146 (3d Cir. 2010). Because there were no procedural errors here, *Olhovsky* is inapt.

We will thus affirm.